**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| **ex rel. CALVIN CRAIG,** | ) | |
| | ) | |
| **Petitioner,** | ) | **No. 11 C 6509** |
| | ) | |
| **v.** | ) | **Judge Ronald A. Guzmán** |
| | ) | |
| **DAVE REDNOUR, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Calvin Craig has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 to vacate his convictions for murder and aggravated assault. For the reasons set forth below, the Court denies the petition and terminates this case.

**Background**

In December 2000, after a bench trial, Craig was found guilty of first degree murder and aggravated battery with a firearm and sentenced to consecutive prison terms of forty-five and fifteen years, respectively. (Pet. at 1.) He appealed his conviction, arguing that: (1) the state's evidence was insufficient to convict; (2) the state violated his due process rights by knowingly offering the perjured testimony of eyewitnesses Quintius Taylor and Antwon Bishop; (3) the state violated his due process rights by requiring Taylor to testify despite his invocation of his Fifth Amendment rights; and (4) the court erred in admitting the expert testimony of a gang crimes officer. (*See* Gov't Ex. A, Br. & App. Def.-Appellant at 1-2, *People v. Craig*, No. 1-01-1993.) The appellate court

rejected Craig's arguments. (*See* Gov't Ex. E, *People v. Craig*, No. 1-01-1993 (Ill. App. Ct. Sept. 12, 2002).)

Craig filed a petition for leave to appeal ("PLA") to the supreme court, arguing that: (1) there was insufficient evidence to convict; (2) the trial court erroneously forced Taylor to testify; and (3) the trial court erred in admitting the expert testimony of the gang crimes officer. (*See* Gov't Ex. H, PLA at 2, *People v. Craig*, No. 95248.) The supreme court denied the PLA. (*See* Gov't Ex. I, *People v. Craig*, No. 95248 (Ill. Feb. 5, 2003).)

Craig filed a petition for post-conviction relief, arguing that: (1) trial counsel was ineffective for failing to (a) obtain a ballistics expert, (b) call eyewitness Barbara Press, (c) adequately cross-examine Bishop and (d) call a barber witness to testify that the "fade" hairstyle allegedly worn by the shooter was different from the braided hairstyle worn by Craig; (2) appellate counsel was ineffective for failing to: (a) argue that Bishop's pretrial statements were inadmissible; and (b) raise the ineffective assistance of trial counsel claims; and (3) the state coerced Bishop into making statements incriminating Craig and knowingly presented his perjured testimony at trial. (*See* Gov't Ex. J, Def.'s Br. & Arg., App. 44-48, Def.'s Verified Am. Post-Conviction Pet., *People v. Craig*, No. 99 CR 16598.) However, counsel presented only three of these claims – that trial counsel was ineffective for failing to obtain an expert and call Barbara Press and appellate counsel was ineffective for failing to argue that Bishop's statements were inadmissible – during the evidentiary hearing on the petition, all of which the court rejected. (*See* Gov't Ex. NN, *People v Craig*, No. 99 CR 16598 (Cir. Ct. Cook Cnty.),12/22/05 Hr'g Tr. at II-30-33; *id.*, 2/22/07 Hr'g Tr. at MM-3-10.)

Craig appealed, arguing that: (1) trial counsel was ineffective for failing to: (a) conduct an adequate investigation of exculpatory evidence relating to the gun used in the killing, (b) secure a

ballistics expert and (c) present testimony of eyewitness Barbara Press; (2) the post-conviction court failed to make a fact finding necessary to justify Craig's consecutive sentences; and (3) appellate counsel was ineffective for failing to argue that admitting Bishop's statements violated Craig's Confrontation Clause rights. (*See* Gov't Ex. J, Def.'s Br. & Arg. at 20-47, *People v. Craig*, No. 1-06-0500).) The appellate court rejected these arguments and affirmed the lower court's ruling. (*See* Gov't Ex. X, *People v. Craig*, No. 1-06-0500 (Ill. App. Ct. Mar. 26, 2010).)

Craig filed a PLA, arguing that trial counsel was ineffective for failing to investigate exculpatory evidence and obtain a ballistics expert and appellate counsel was ineffective for failing to make the Confrontation Clause argument. (*See* Gov't Ex. Y, PLA at 1-2, *People v. Craig*, No. 0010277.) The supreme court denied the PLA. (*See* Gov't Ex. Z, *People v. Craig*, No. 0010277 (Ill. Sept. 29, 2010).)

In March 2010, Craig filed a state habeas petition, arguing that his conviction was invalid because the warrant for his arrest had been procured by fraud. (*See* Gov't Ex. DD, *People v. Craig*, No. 1-10-1539 at 2 (Ill. App. Ct. Mar. 4, 2011).) The petition, his appeal of the decision on his petition and his PLA to the supreme court were all denied. (*See id.* at 2-3; Gov't Ex. EE, PLA, *People v. Craig*, No. 112186; Gov't Ex. FF, *People v. Craig*, No. 112186 (Ill. May 25, 2011).)

## Discussion

In his § 2254 petition, Craig claims that: (1) his trial counsel was ineffective for failing to present expert testimony on ballistics; (2) his due process rights were violated by the trial court's: (a) admission of statements made and later recanted by Antwon Bishop; (b) ordering Quintius Taylor to testify despite his invocation of the Fifth Amendment; (c) admission of expert testimony

3

by a gang crimes police officer, and (d) admission of Bishop's perjured testimony; and (3) his Fourth Amendment rights were violated because he was arrested pursuant to an invalid warrant.

**Procedural Default**

Craig's last claim, which he first raised in his state habeas petition, was rejected by the state court because it did not meet the statutory requirements for habeas relief. (*See* Gov't Ex. AA, Br. Supp. Mot. Withdraw Counsel Appeal at 2-4, *People v. Craig*, No. 1-10-1539; Gov't Ex. EE, PLA, *People v. Craig*, No. 112186; Gov't Ex. FF, *People v. Craig*, No. 112186 (Ill. May 25, 2011)); *see also* 735 Ill. Comp. Stat. 5/10-124 (setting forth the grounds for state habeas relief); *People v. Gosier*, 792 N.E.2d 1266, 1270 (Ill. 2001) (stating that a habeas writ will issue only if the court lacked jurisdiction over the petitioner or some post-conviction occurrence entitles the petitioner to release). Because this claim was rejected on an independent and adequate state ground, it is procedurally defaulted. *See Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010) ("[A] federal court may not review a claim . . . which was rejected [by the state courts] on an independent and adequate state ground," *i.e.*, for failure to comply with a "a firmly established" state procedure).

The Court can consider this claim, despite the default, if Craig shows "either cause for the default and actual prejudice as a result of the alleged violation of federal law" or can show "that no reasonable [fact finder] would have found him guilty . . . but for the error(s) he attributes to the state court." *Id.*; *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004). Because Craig has done neither, the Court cannot review this claim.

**Merits**

The Court can grant habeas relief on Craig's other claims only if the state court's decisions

on them were "contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court" or "based on an unreasonable determination of the facts

in light of the evidence presented." § 2254(d)(1),(2).

With respect to the first claim, for ineffective assistance of trial counsel, the state court said:

Claims of ineffective assistance of trial counsel are resolved under the standard set
forth in Strickland v. Washington, 466 U.S. 688, 80 L. Ed. 2d 674, 104 S. Ct. 2052
(1984). . . .  Under Strickland, . . . . a defendant must establish that counsel's
performance was below an objective standard of reasonableness . . . . [and] "that
there is a reasonable probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different. . . ." Strickland, 466 U.S. at 694,
80 L. Ed. 2d at 698, 104 S. Ct. at 2068. . . .

. . . .  A decision that involves a matter of trial strategy will typically not support a
claim of ineffective representation.  People v. Simmons, 342 Ill. App. 3d 185, 191
(2003).  Decisions regarding which witnesses to call and which evidence to present
on a defendant's behalf are viewed as matters of strategy and are generally immune
from claims of ineffective assistance. . . .

Here, defendant cannot show that his trial attorney's decision not to hire an expert
to test defendant's firearm was not a matter of trial strategy and thus, immune from
claims of ineffective assistance.  At trial, the State presented the testimony of Brian
Mayland as a firearms expert.  Mayland testified that his results were inconclusive
as to whether the gun fired the bullets and cartridge cases.   The first explanation for
the inconclusive results given by Mayland was that it was not the same gun.  At the
evidentiary hearing, Sam Adam [Craig's trial counsel] stated that he and co-counsel
did not hire an expert because the State could not prove that the defendant's gun was
the weapon used in the shooting.  He also said they unsuccessfully sought to have the
gun excluded from trial.  While defendant presented the testimony of an expert at his
evidentiary hearing . . . that the gun could be eliminated, the State countered with a
different expert who stated that the gun . . . could not be eliminated.

. . . .  At trial, defendant's attorneys thoroughly cross-examined Mayland about the
number of handguns that had similar characteristics as defendant's firearm.  Mayland
admitted there were at least 100,000 nine millimeter semi-automatic handguns with
[sic] same characteristics as defendant's gun.  It was a reasonable trial strategy for
defendant's trial attorneys to question Mayland about his inconclusive findings and

5

> the number of firearms that bore the same characteristics as defendant's firearm. The evidence at trial did not establish that defendant's firearm was the one used in the shooting. Defendant's trial attorneys chose, as a matter of trial strategy, to highlight that fact through cross-examination of the State's expert. Accordingly, we reject defendant's claim of ineffective assistance.

(*See* Gov't Ex. X, *People v. Craig*, No. 1-06-0500 at 15-17 (Ill. App. Ct. Mar. 26, 2010).) As this passage illustrates, the state court identified the controlling legal standard, *Strickland*, and reasonably applied it to the facts of Craig's case. Therefore, he is not entitled to § 2254 relief on this claim.        In Claim 2a, Craig alleges that the trial court's admission of pre-trial statements made and later recanted by Bishop denied him the right to confront Bishop. The Confrontation Clause gives a criminal defendant the right to cross-examine witnesses who testify against him. *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986). However, the Clause only "guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (emphasis original). Thus, "the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination." *California v. Green*, 399 U.S. 149, 158 (1970); *Johnson v. Bett*, 349 F.3d 1030, 1037 (7th Cir. 2003) ("Even when presumptively unreliable hearsay is admitted as substantive evidence, there is no violation so long as the declarant testifies as a witness and is subject to cross-examination."); *see Nelson v. O'Neil*, 402 U.S. 622, 629-30 (1971) ("We conclude that where a codefendant takes the stand in his own defense, denies making an alleged out-of-court statement implicating the defendant, and proceeds to testify favorably to the defendant concerning the underlying facts, the defendant has been denied no rights protected by the Sixth and Fourteenth Amendments.").

6

The state court concluded that Bishop's statements were admissible under Illinois law because doing so did not violate Craig's rights under the Confrontation Clause:

> . . . . Bishop's prior out-of-court statements were admitted under section 115-10.1 of the Code of Criminal Procedure . . . . [, which] allows for the admission of prior statements of a witness [if]: (1) [they are] inconsistent with trial testimony; (2) the witness is subject to cross-examination concerning the statement; (3) and the prior statement was made under oath at a prior hearing or trial or describes an event that the witness had personal knowledge of and the statement is signed or sworn by the witness or recorded on audio or video tape. 725 ILCS 5/115-10.1 (West 2002). Defendant's challenge relates to the second requirement of the statute, that the witness be subject to cross-examination on the statement. Here, Bishop denied making the earlier statements and did not respond willingly to questions. However, he was physically present and available for cross-examination.

> "The confrontation clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." People v. Hampton, 387 Ill. App. 3d 206, 214 (2008), citing Delaware v. Fensterer, 474 U.S. 15, 20, 88 L. Ed. 2d 15, 19, 106 S. Ct. 292, 294 (1985).

> . . . .

> . . . . [T]rial counsel's cross-examination of Bishop attempted to imply that Bishop's prior statements implicating defendant were coerced by the police. Bishop testified on cross-examination that . . . . he was taken by police in handcuffs four or five times for questioning. . . . [and] thought he could be charged for murder every time he was taken in for questioning. Bishop also testified that he did not see defendant with a gun near 71st and Green at the time of the shooting. Defendant's trial attorneys were able to cross-examine Bishop in such a way as to cast doubt on the truthfulness of his prior statements. . . .

(Gov't Ex. X, *People v. Craig*, No. 1-06-0500 at 21-3 (Ill. App. Ct. Mar. 26, 2010).) Though the state court viewed this issue through the lens of state law, it identified the controlling federal standard and applied it reasonably to the facts of this case.

In Claim 2b, Craig alleges that the trial court violated his due process rights by ordering Quintius Taylor to testify despite his invocation of the Fifth Amendment. The state court assumed that Craig had standing to raise this claim based on the Supreme Court's decision in *Ohio v. Reiner*,

532 U.S. 17 (2001) (per curiam). (*See* Gov't Ex. E, *People v. Craig*, No. 1-01-1993 at 22-24 (Ill. App. Ct. Sept. 12, 2002).) In that case, a witness in a state criminal prosecution had invoked her Fifth Amendment right not to testify and was given transactional immunity under state law. *Reiner*, 532 U.S. at 18-19. The defendant was convicted and appealed, arguing that a prerequisite to granting immunity under state law, that the witness' testimony be incriminating, was lacking because the witness denied any involvement in the crime. *State v. Reiner*, No. L-97-1002, 1998 WL 879833, at \*2 (Ohio App. Ct. Dec. 18, 1998). Without addressing defendant's standing to raise it, the appellate court rejected the claim and overturned the conviction on other grounds. *See id.* at \*3-13. Both parties appealed, and the Ohio Supreme Court held that the witness should not have been given immunity because her denial of involvement removed any possibility of self-incrimination. *State v. Reiner*, 731 N.E.2d 662, 675 (Ohio 2000). The court rejected the state's standing argument, reasoning that the defendant was not asserting the witness' Fifth Amendment rights but challenging the validity of the right she asserted. *Id.*

In a per curiam decision that did not address standing, the U.S. Supreme Court reversed:

> [W]e have never held, as the Supreme Court of Ohio did, that the [Fifth Amendment] privilege is unavailable to those who claim innocence. To the contrary, we have emphasized that one of the Fifth Amendment's basic functions is to protect innocent men who otherwise might be ensnared by ambiguous circumstances. . . .

> The Supreme Court of Ohio's determination that Batt [the witness] did not have a valid Fifth Amendment privilege because she denied any involvement in the abuse of the children clearly conflicts with [Supreme Court precedent]. Batt had "reasonable cause" to apprehend danger from her answers if questioned at respondent's trial. . . . Batt therefore had a valid Fifth Amendment privilege against self-incrimination.

*Reiner*, 532 U.S. at 21-2 (quotations and alterations omitted).

The state court here interpreted the *Reiner* Court's silence on the standing issue as a:

> [C]hange[] [in] the law concerning whether a defendant may argue the merits of an alleged violation of a witness's fifth amendment right not to testify. . . . If Reiner had no standing to complain, there would ne no need for the Supreme Court to rule the way it did; the Court simply could have disposed of the issue in a brief paragraph. Nonetheless, because the Court chose to take the issue on its merits, we can only assume that the Court now allows defendants to argue the merits of a third party's or witness's allegation that his or her fifth amendment right not to testify was violated.

(Gov't Ex. E, *People v. Craig*, No. 1-01-1993 at 23-24 (Ill. App. Ct. Sept. 12, 2002).) Thus, the court "[a]ssum[ed] that [Craig] has standing to argue a violation of Taylor's [Fifth Amendment] right." (*Id.* at 23.)

That assumption is contrary to Supreme Court case law spanning the last century, that "the immunity provided by the 5th Amendment against self-incrimination is personal to the witness himself . . . , and not that of the party on trial." *McAlister v. Henkel*, 201 U.S. 90, 91(1906); *see Rogers v. United States*, 340 U.S. 367, 371 (1951) ("[T]he decisions of this Court are explicit in holding that the privilege against self-incrimination is solely for the benefit of the witness and is purely a personal privilege of the witness.") (quotations and footnotes omitted); *Goldstein v. United States*, 316 U.S. 114, 121 n.11 (1942) ("The privilege against self-incrimination afforded by the Fifth Amendment is personal to the witness."). Thus, we conclude that the state court erroneously read *Reiner*, a per curiam decision in which the standing issue is not even addressed, as implicitly overruling decades of established law that a defendant has no standing to assert the Fifth Amendment rights of a witness. The error was harmless, however, given the state court's ultimate rejection of the Fifth Amendment claim. Thus, Craig is not entitled to habeas relief on this claim.

In claim 2c, Craig alleges that the trial court violated his due process rights by admitting expert testimony by a gang crimes police officer. "The admissibility of evidence is generally a matter of state law." *Milone v. Camp*, 22 F.3d 693, 702 (7th Cir. 1994). Thus, a state court

9

evidentiary ruling can be the basis for habeas relief only if "the probative value of the [contested] evidence was so greatly outweighed by its prejudice to [the defendant] that its admission denied him a fundamentally fair trial." *Id.* Here, it is not clear that the contested testimony had any impact, let alone a prejudicial one, on the outcome of the case. Rather, the court said its findings were based on Bishop and Taylor's pre-trial statements and identifications of Craig, the fact that the physical evidence corroborated their statements and Craig's possession of a gun like the one used in the shooting. (*See* Gov't Ex. JJ, 12/20/00 Hr'g Tr. at 72-85, *People v. Craig*, No. 99 CR 16598 (Cir. Ct. Cook Cnty.).) Thus, even if the gang officer's testimony was erroneously admitted, that error was not one of constitutional proportion.

Craig's last claim is that the trial court violated his due process rights by admitting Bishop's perjured trial testimony. The state court evaluated this claim under state law and rejected it. (*See* Gov't Ex. E, *People v. Craig*, No. 1-01-1993 at 18-20 (Ill. App. Ct. Sept. 12, 2002).) Thus, the Court must determine whether federal law dictates a different result.

"[A] conviction obtained through use of false evidence, known to be such by representatives of the State" violates due process. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). To prevail on this due process claim, defendant must prove that the testimony was false, the government knew or should have known it was false and it is likely that the false testimony affected the court's judgment. *United States v. Freeman*, 650 F.3d 673, 678 (7th Cir. 2011). The false testimony in this case, Bishop's denial that he made any statements to the police, assistant state's attorney or before the grand jury, was clearly not material to the trial court's decision. On the contrary the court expressly rejected Bishop's trial testimony as a fabrication and credited his pretrial statements inculpating Craig. (*See* Gov't Ex. JJ, 12/20/00 Hr'g Tr. at 75-80, *People v. Craig*, No. 99 CR 16598 (Cir. Ct.

10

Cook Cnty.).)  Because the false testimony adduced at trial did not affect the trial court's judgment, its admission did not violate Craig's due process rights.


### Conclusion

For the reasons set forth above, the Court denies Craig's § 2254 petition and declines to issue a certificate of appealability because Craig has not made "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *see Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (stating that to make a substantial showing of the denial of a constitutional right, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessments of the constitutional claims debatable or wrong").  This case is terminated.


**SO ORDERED.**                                        **ENTERED:March 19, 2013**

_____
**HON. RONALD A. GUZMAN**
**United States District Judge**